YELVERTON, Judge.
This appeal is by Travelers Insurance Company from a judgment refusing to modify a worker’s compensation award rendered in favor of John Batten, III, for an on-the-job injury that happened in 1976. We reverse.
Batten was injured on July 13, 1976, when he fell off a tractor and a large wheel passed over his pelvic area. At the time, he was 15 years old and was working as a farm hand on his father’s farm earning $100 a week. He suffered serious injuries and was declared totally and permanently disabled in a judgment rendered in 1982. Batten was awarded a little over $50 a week. Travelers has been paying that amount since the judgment was rendered.
Travelers filed a rule to modify the worker’s compensation judgment. It was heard in 1992. Travelers claimed that for the 10 years before the hearing Batten, III, had been operating a 400 acre cotton and corn farm in Natchitoches Parish, borrowing money through the government annually for the farming operation, and paying himself $1,000 a month to live on out of the loan proceeds. Batten, Ill’s, defense is that he is a farmer on paper only. He explained that all he did was lend his name to his father’s farming operation, so that his father’s borrowing limit could be increased, and that, in exchange, his father let him use $1,000 a month as a sort of gratuity to live on out of the loan. The trial judge ruled for the plaintiff. His reasons for judgment were:
All right. The Court finds that Mr. John T. Batten, Jr. is the farmer and that Mr. John T. Batten, III, applies for a farm loan as one of the four individuals under which Mr. John Batten, Jr. farms. That Mr. John T. Batten, III, is not a farmer in the sense that he is gainfully employed and would enable Travelers Insurance Company to be relieved of their obligation to pay worker’s compensation.
Mr. Batten is severely injured, his injuries have deteriorated since this ease was originally heard. And he would not be a farmer were it not for the operations of his father. And to discontinue his worker’s compensation on the basis of the fact that his father uses him to borrow money would be a gross miscarriage of justice and will not be done. So the Motion is denied.
Permanent total disability in 1976 meant, among other things, inability to engage in any gainful occupation for wages. *1235 La.R.S. 23:1221. In 1976, La.R.S. 23:1331 provided that a judge of the trial court that rendered the judgment should review the judgment upon application of either party after six months. A modification would be appropriate when the incapacity of the employee had been subsequently diminished or increased. Modification might be sought if the incapacity of the employee had been subsequently diminished, and this diminishment of incapacity was not limited to an improvement in the claimant’s physical condition. Wheat v. Ford, Bacon and Davis Const. Corp., 479 So.2d 439 (La.App. 1st Cir.1985). Thus, the issue before the court was whether Batten, III, was engaged in a gainful occupation.
We are bound to the same standard of review in a worker’s compensation case as in any other ease. Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). The standard of review is explained in Rosell v. ESCO, 549 So.2d 840 (La.1989). Generally speaking, where there are two sides to the case or where the decision is based on credibility, we always have to defer to the findings of fact of the trial judge.
In the present case the only two witnesses who testified were Batten, III, and his father. The documentary evidence consisted of copies of Batten, Ill’s, income tax returns for the last five years, and copies of U.S. Department of Agriculture records showing Batten, III, as a farming operator.
Our thorough review of the facts of this ease in the record reveals that the only evidence that Batten, III, was a paper farmer only was his and his father’s conclusory testimony so characterizing his farming operations. The specific facts which they gave in response to specific questions did not support this characterization. They said he is a paper farmer; but the truth is, he is a real farmer.
Batten, III, testified in a deposition that his livelihood is farming. He has been farming for nine or ten years. He farms as an individual, not a corporation. He has a farm account and a personal checking account in a bank. He currently farms roughly 400 acres in cotton and some corn. He has no partner but his father helps him. He has his own equipment, consisting of tractors, disks, and plows, and he uses his father’s labor. He leases all of his land from E.G. Rogé, Sr., and Mary Keyser Polman. He borrows money every year to make the crop. This money, as well as the proceeds from his farming, go into his farm account, and his bills are paid out of that account. From his farm account he writes a check every month for $1,000 for deposit in his personal account. With this $1,000 he pays his living expenses, his gas for his pickup, and a few farm debts. Most farm debts are paid out of the farm account. He puts his worker’s compensation weekly benefit check into a savings account. He occasionally hires his own labor for his farm and pays them. When he uses his father’s labor, he reimburses his father, or they trade off. His father helps him on the farm but gets no profit from it. In the off season, he gets the ground ready for the next planting. When it rains he works on his equipment patching it up. He does not do much of any physical work himself, because of his physical problems, but he sees to it that it is done. He was making $100 a week as a farm laborer when he got hurt. He is presently able to live off his farming operation, but barely. He just “makes the year”. He has no plans to get out of the farming business and it is his desire and intention to stay with farming. As far as he knows his credit rating is good.
He keeps all of his equipment at his dad’s shop. For years he has made income tax returns showing him as a farmer, showing his farm income and expenses, and listing equipment purchased by him through the farm account. In 1990 his tax return showed his income from farming was over $19,000.
The above testimony was given by Batten, III, in his deposition before trial. At the trial, his testimony placed greater emphasis on the contention that he was a farmer in name only. He testified that he has been on loans and in the farming operation in name *1236 only and that for the last 10 years, he has not actually run the fanning operation. He stated that his dad did all the planting, fertilizing, and harvesting on the farm. He testified that his mother paid all the bills and took care of the administrative work. He uses money from the loan to live on, because the FHA drew up the loans to allow a certain amount for living expenses. He explained that his father really runs the farm, but that his father can’t borrow enough money in his name only, because of debt limitations, so his father uses other people, like Batten, III, as operators, to increase the debt limit. They have to keep records like it’s a separate farming operation but it’s all one, and it is his father’s. He described himself as a paper book farmer.
In his turn on the witness stand, the elder Batten stated:
No, this is primarily a paperwork type operation. And what it does it affords him a way of having some living income through the operation of this farming, ah ... I won’t call it a game but that’s what it is. It’s a method by which Johnny [Batten, III] uses his name and his ability as an individual to get a loan through FHA.
The elder Batten went on to state that his son was actually living on the loan. The father testified that he and his staff did all the actual work. Through his and his wife’s efforts and his farming operation his son has been able to pay back FHA enough to keep these loans coming every year so that his son could draw out a monthly living expense.
His father further testified that although Batten, III, cannot do the physical labor he did before the accident and his condition has worsened, he does manage, oversee, and make decisions about the work done by hired labor for which he pays. His father may help him, but he is reimbursed and Batten, III, keeps all the profits. He testified that Batten, III, kept the money that he earned and. reported on his income tax returns. Furthermore, Batten, Sr., admitted that Batten, III, could get along without him.
In sum, as we understand the testimony of both witnesses, as well as the comments of the trial judge in oral reasons for judgment, this paper transaction is a tolerated method whereby certain farmers are permitted to live off a loan for being farming operators, and performing certain basically required functions as operators. Batten, III, without question, is performing those functions. He is earning his money, which is more than what he was getting at the time he got injured. Batten, III, does more than merely sign his name on the government loans. He pays them back out of his own work and income. Although his physical incapacity has not diminished, his incapacity as far as gainful employment is concerned has diminished. He is not entitled to any worker’s compensation benefits for total permanent disability. We need not be concerned with partial permanent disability because Batten, III, has already been paid more than the maximum 450 weeks allowable under the worker’s compensation laws as they read in 1976.
For the foregoing reasons, we reverse the judgment of the trial court. Travelers Insurance Company’s motion to terminate benefits is granted. Costs in this court and the district court are assessed to John T. Batten, III.
REVERSED AND RENDERED.